this period, he was not paid the elevated rate for overtime work, and that he was not permitted an uninterrupted half hour for required meal breaks. (*Id.* ¶¶ 10–12.)

On November 25, 2019, Plaintiff and the Dunwoodie Defendants submitted a proposed settlement agreement (the "Settlement Agreement" (Dkt. No. 15, Ex. 1)) to the Court, which they requested that the Court approve. ("Approval Request" (Dkt. No. 15).)

## II. Discussion

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *See* Fed. R. Civ. P. 41(a)(2). The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (quotation marks omitted), *cert. denied*, 136 S. Ct. 824 (2016).[2] Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'" *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, No. 15-CV-3068, 2015 WL 5915843, at *1 (S.D.N.Y. Oct. 7, 2015) (same).

---

[2] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation and' liquidated damages due under the FLSA." *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

When assessing a proposed settlement for fairness, there is generally "a strong

presumption in favor of finding a settlement fair, as the Court is generally not in as good a

position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v.*

*Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also*

*Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at \*1 (S.D.N.Y. Feb. 4, 2016)

(same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at \*4 (S.D.N.Y. Nov.

6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at \*1

(S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of

the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement
> will enable the parties to avoid anticipated burdens and expenses in establishing
> their respective claims and defenses; (3) the seriousness of the litigation risks faced
> by the parties; (4) whether the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the possibility of fraud or
> collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks

omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653,

at \*1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL

2359502, at \*2 (S.D.N.Y. Apr. 27, 2015) (same). Conversely, factors which weigh against

finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a
> likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-
> compliance by the same employer or others in the same industry or geographic
> region; and (4) the desirability of a mature record and a pointed determination of
> the governing factual or legal issue to further the development of the law either in
> general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same). Making this determination "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).[3] To this end, courts require information surrounding "the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award." *Id.* (first alteration in original) (quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

Under the Settlement Agreement, the Dunwoodie Defendants agree to pay a total sum of $14,000 (the "Settlement Amount"). (Approval Request 2; Settlement Agreement 1.) This amount reflects two-thirds of Plaintiff's calculated potential recovery of $23,000: $4,000 in base damages, $4,000 in liquidated damages, 10,000 in Wage Theft Prevention Act ("WTPA") damages under NYLL, and $5,000 in attorney's fees. (Approval Request 2.)

The Parties represent that Plaintiff's calculation of base damages is based on Defendants' "accurate records of Plaintiff's hours worked." (*Id.*) While the Parties have not provided these

---

[3] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (alterations and quotation marks omitted).

4

records to the Court, the Court notes that the calculation is consistent with allegations included in the Complaint. Plaintiff alleges that he worked an average of 28 hours overtime per week, (Compl. ¶ 11), and that his salary averaged approximately $10 per hour, (*id.* ¶ 9). Accordingly, Plaintiff's allegations suggest that he was denied approximately $140 per week in overtime pay. Although the Complaint alleges that he was employed by Defendants from approximately July 2016 to October 2018, (Compl. ¶ 10), the Parties have now specified that Plaintiff was employed by the Dunwoodie Defendants (as opposed to the remaining Defendants) for approximately six months. (Approval Request 2.) Over the course of six months, $140 per week amounts to approximately $3,640. This approximation is similar to the Parties' figure of $4,000, an amount that the Parties calculated based on more precise records. The Parties' calculation of Plaintiff's potential recovery therefore appears to be accurate.

In light of that total potential recovery, the Court concludes that the Settlement Amount is reasonable. While the Settlement Amount is less than Plaintiff' optimistic, best-case scenario, recovery (which includes WTPA damages), it exceeds the Plaintiff's potential FLSA recovery (including both base and liquidated damages). Moreover, the Settlement Amount equals two-thirds of Plaintiff's total, potential recovery. Precedent confirms that securing two-thirds of a potential total recovery is generally deemed fair, reasonable, and adequate. *See, e.g., Garcia v. Cloister Apt. Corp.*, No. 16-CV-5542, 2019 WL 1382298, at \*2 (S.D.N.Y. Mar. 27, 2019) ("[P]laintiffs' net settlement . . . represents more than 28% of their total alleged damages and more than 72% of their claimed unpaid wages. This percentage is reasonable, especially given plaintiffs' potential obstacles to recovery."); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV-3531, 2016 WL 3791149, at \*2 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of less than 25% of the maximum possible recovery). Additionally, as the Parties note, Plaintiff might

5

not prevail on all claims at trial, particularly with respect to liquidated damages. (Approval Request 2.) Through settlement, however, Plaintiff will obtain most of his potential recovery and will avoid the time, costs and hazards of litigation. *See Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) ("settlement [protects] the Parties from the risks associated with going to trial"); *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016) (finding settlement sum fair "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement").

Next, the Court is also satisfied that the Settlement Agreement was negotiated competently, in good faith, at arms' length, and that there was no fraud or collusion. The Parties have represented such in their Approval Request, and Plaintiff's counsel has extensive experience and expertise in labor and employment law, including over 27 years of litigation, and several published law articles, in the field. (*See* Approval Request 3.).

Additionally, the Court is not aware of other employees who are similarly situated to Plaintiff, and Plaintiff will be the only employee affected by the settlement and dismissal of the lawsuit. These facts also weighs in favor of approval. *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that that no other employee came forward and that "only the named plaintiff would be affected by dismissal," and that these facts supported approval of the proposed settlement); *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *2 (S.D.N.Y. Nov. 30, 2015) (noting that the fact that "no other employee ha[d] come forward" supported settlement approval); *Santos v. Yellowstone Props., Inc.*, No. 15-CV-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (same).

6

However, the Court finds that the Proposed Settlement's release provision is too broad. "[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (internal quotation marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants' "); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

Here, the proposed release provides that Plaintiff releases the Dunwoodie Defendants from "all claims raised in the Lawsuit and all claims which could have been raised in this Lawsuit by this Plaintiff, including those arising under the Fair Labor Standards Act and/or the New York Labor Law." (Settlement Agreement 2.) The release provision continues, "Plaintiff

7

agrees that he is waiving all claims he could have asserted against Defendants under the Fair
Labor Standards Act and New York Labor law, including, but not limited to, claims for
minimum wage, overtime, spread of hours, commissions, tips or gratuities, and all claims arising
under the Wage Theft Prevention Act ("wage and hour claims"). The inclusion of "all claims
which could have been raised in this Lawsuit by this Plaintiff" (beyond simply FLSA and NYLL
claims) and the waiver of *all* FLSA and NYLL claims (beyond simply those relating to wage and
hour issues) is overbroad. Indeed, the FLSA and NYLL "govern more than just 'wage-and-hour
issues,' and the release as written could potentially extinguish claims under provisions of FLSA
or NYLL 'that have no relationship whatsoever' to the claims at issue in this case." *Rojas v.
Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (quoting
*Cheeks*, 796 F.3d at 206–07). As noted, the caselaw is clear that "any release provision must be
limited to the claims at issue in this action." *Lazaro-Garcia*, 2015 WL 9162701, at *2; *see
also Larrea v. FPC Coffees Realty Co., Inc.*, No. 15-CV-1515, 2017 WL 1857246, at *3
(S.D.N.Y. May 5, 2017) ("[A] number of judges in this District refuse to approve any FLSA
settlement unless the release provisions are limited to the claims at issue in this action." (internal
quotation marks omitted)). Here, the release provision does not appear to be limited to FLSA
and NYLL claims, and it is not expressly limited only to the conduct underlying the claims in
this case. Although a release "may include claims not presented and even those which could not
have been presented," it must still be limited to "conduct [that] arises out of the identical factual
predicate as the settled conduct." *Nights of Cabiria*, 96 F. Supp. at 181; *see also Martinez v.
Gulluoglu LLC*, No. 15-CV-2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) ("The
[c]ourt will not approve a release provision that extends beyond the claims at issue in this
action."); *cf. Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3

8

(E.D.N.Y. June 26, 2017) (approving release that, "while broad, ... relates specifically to wage and hour issues without encompassing, for example, prospective discrimination claims").

Finally, the Court finds that the attorneys' fees requested by Plaintiff's counsel are reasonable. Under both FLSA and the New York Labor Law, a successful plaintiff—including one who settles—is entitled to attorneys' fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at \*2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), N.Y. Labor Law §§ 198, 663(1)). In the Second Circuit, courts may calculate attorneys' fees using one of two methods: the "lodestar" method or the "percentage of the fund" method. *See McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "Under the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the common fund." *Lizondro-Garcia*, 2015 WL 4006896, at \*3. "Under the lodestar method, 'the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate.'" *Ortiz v. Chop't Creative Salad Co. LLC*, 89 F. Supp. 3d 573, 590 (S.D.N.Y. 2015) (footnote omitted) (quoting *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000)). "After the computation is done, 'the district court may, in its discretion, increase the lodestar by applying a multiplier based on "other less objective factors," such as the risk of the litigation and the performance of the attorneys.'" *Id.* at 590–91 (quoting *Goldberger*, 209 F.3d at 47). "Although [the Second Circuit] ha[s] acknowledged that the trend in this Circuit is toward the percentage method, it remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel*, 595 F.3d at 417 (some quotation marks omitted). Under either approach, courts draw on the following considerations— commonly known as the "Goldberger factors"—when assessing the reasonableness of attorneys'

9

fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (alteration and quotation marks omitted).

When requesting attorneys' fees in an FLSA case, "counsel must submit evidence providing a factual basis for the award." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012). Although courts may elect to award fees by either considering the lodestar method—the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended—or the percentage method—a percentage of the total amount recovered by the plaintiffs—"[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A.*, Inc., 396 F.3d 96, 121 (2d Cir. 2005). Even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181. The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Under the Proposed Settlement, Plaintiff's Counsel would receive $4,666, which, minus $400 to reimburse Counsel for a filing fee, reflects approximately 30% of the Settlement Amount. Such a percentage is appropriate as courts in the Second Circuit routinely award

10

attorneys in FLSA settlements one-third of the total recovery in fees. *See Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at \*1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at \*2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), adopted by 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016). Counsel also notes that his typical billing rate falls between $375 and $500 per hour, and that his requested rate in this case is $450 per hour. (Approval Request 3.) Counsel has documented the hours he has spent on this case, and thereby demonstrated that his proposed fee here falls somewhat below a total based on Counsel's per-hour rate. (*Id.* 5–6.) The proposed attorney's fee is therefore reasonable under the "lodestar" method as well. *See Pucciarelli*, 2017 WL 2778029, at \*2 (noting that the "lodestar method confirms [the] conclusion" that a fee constituting 33.3% of FLSA settlement was reasonable). Based on these factors, the Court finds that $4,666 is a reasonable fee.

## III. Conclusion

For the reasons stated in this Order, the Parties' request is denied without prejudice. The Parties may reapply for approval of a settlement that appropriately narrows the release provision to apply only to the wage-and-hour-related conduct underlying this lawsuit

SO ORDERED.

Dated: White Plains, New York
March 10, 2020

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

11