UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAWAID I. KHAN,

                                    Plaintiff,

        v.

YONKERS AUTO CENTER, INC. and
RAYMOND ALBANO,

                                    Defendants.

No. 19-CV-05581 (KMK)

OPINION & ORDER

Appearances:

Raymond Nardo, Esq.
Raymond Nardo, P.C.
Mineola, NY
*Counsel for Plaintiff*

Clifford H. Greene, Esq.
Clifford H. Green & Associates
New Rochelle, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

On June 14, 2019, Plaintiff Jawaid Khan ("Plaintiff") brought this Action under the Fair

Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and the New York Labor Law § 190, *et*

*seq.* ("NYLL"), against Defendants Dunwoodie Gas Station, Inc. and Reyad Mussa (the

"Dunwoodie Defendants"), and Yonkers Auto Center, Inc. and Raymond Albano (the "Yonkers

Defendants" and, together with the Dunwoodie Defendants, "Defendants").  (*See* Compl. ¶¶ 1–2

(Dkt. No. 1).)

Plaintiff and the Yonkers Defendants ("the Parties") have jointly requested the approval

of a proposed partial settlement resolving Plaintiff's claims against the Yonkers Defendants (the

"Proposed Settlement Agreement" or "PSA").  (Letter from Raymond Nardo, Esq., to Court

(Apr. 26, 2021) ("Joint Letter") Ex. 1 ("PSA") (Dkt. Nos. 26, 26-1).).[1]  For the reasons that

follow, the Parties' Application is denied without prejudice.

## I.  Background

Plaintiff was employed by Yonkers Defendants, earning minimum wage as a cashier,

from approximately July 2016 to April 2018.  (Joint Letter 2.)  According to the Complaint,

Plaintiff worked approximately 68 hours per week at a rate that ranged from $9 per hour to $11

per hour. (Compl. ¶¶ 9, 11.)  Plaintiff alleges that, during this period, he was not paid premium

overtime pay at the rate of time and a half, and that he was not permitted an uninterrupted half

hour for required meal breaks.  (*Id*. ¶¶ 9, 12.)

Plaintiff filed his Complaint on June 14, 2019.  (Dkt. No. 1.)  Yonkers Defendants filed

their Answer on November 18, 2019.  (Dkt. No. 14).  On November 25, 2019, Plaintiff and the

Dunwoodie Defendants jointly requested approval for a proposed partial settlement agreement

resolving all claims against the Dunwoodie Defendants, (Dkt. No. 15), and, on March 10, 2020,

the Court denied the request without prejudice, (Dkt. No. 16).  On December 3, 2020, the Court

so-ordered a stipulation dismissing the Action, pursuant to Rule 41 of the Federal Rules of Civil

Procedure, as to the Dunwoodie Defendants only.  (Dkt. No. 20.)  On April 26, 2021, Plaintiff

and the Yonkers Defendants submitted the instant Application and supporting settlement papers

for the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d

Cir. 2015).  (*See* Joint Letter; PSA.)

---

[1] The proposal for a partial settlement is with respect to the Yonkers Defendants only.
(*See* Joint Letter 1.)

## II.  Discussion

### A.  Standard of Review

Under Fed. R. Civ. P. 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  *See* Fed. R. Civ. P. 41(a)(2).  The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks*, 796 F.3d at 206.[2]  Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'"  *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted); *see also Velasquez v. SAFI-G, Inc.*, 137 F.Supp.3d 582, 584 (S.D.N.Y. 2015) (same).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4

---

[2] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting that "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation and' liquidated damages due under the FLSA."  *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

3

(S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL

4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of

the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement
> will enable the parties to avoid anticipated burdens and expenses in establishing
> their respective claims and defenses; (3) the seriousness of the litigation risks faced
> by the parties; (4) whether the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the possibility of fraud or
> collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (citation and quotation

marks omitted); *see also Zamora v. One Fifty Five Seven Corp.*, No. 14-CV-8043, 2016 WL

1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015

WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same).  Conversely, factors which weigh against

finding a settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a
> likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-
> compliance by the same employer or others in the same industry or geographic
> region; and (4) the desirability of a mature record and a pointed determination of
> the governing factual or legal issue to further the development of the law either in
> general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (citation and quotation marks omitted); *see also Villalva-*

*Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31,

2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-

CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*,

2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to

evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187,

4

2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted).[3]  To

this end, courts require information surrounding

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the
> employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of
> [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs'
> success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Nights of Cabiria, LLC*, 96 F.

Supp. 3d at 176).

### B.  Analysis

#### 1.  Whether Settlement Amount is Fair and Reasonable

Under the PSA, Yonkers Defendants agree to pay Plaintiff a total sum of $15,000.00 (the

"Settlement Amount").  (Joint Letter 1; PSA 1.)  Of the Settlement Amount, $5,000 will go to

Plaintiff's counsel for fees and other costs, (Joint Letter 3), and thus, Plaintiff's net settlement is

$10,000.[4]  Plaintiff alleges that he is owed approximately $9,436 in base damages and $10,000

in damages under the Wage Theft Prevention Act, bringing his total alleged damages to $19,436.

(*Id.*)  However, this figure does not appear to include liquidated damages to which Plaintiff is

allegedly entitled.  (*See* Compl. ¶ 58.)  Liquidated damages are indeed available "in an additional

equal amount" as unpaid overtime compensation under the FLSA.  *See* 29 U.S.C. § 216(b).

Doubling the base damages ($9,436 x 2 = $18,872), the best possible recovery for Plaintiff

---

[3] This approach is consistent with the requirement that "FLSA settlements . . . not be
confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the
public's independent interest in assuring that employees' wages are fair."  *Lopez v. Nights of
Cabiria, LLC*, 96 F. Supp. 3d 170, 177–78 (S.D.N.Y. 2015) (citation and alteration omitted).

[4] Courts evaluate the fairness of a plaintiff's recovery *after* deducting attorneys' fees and
costs.  *See Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct.
5, 2020); *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4
(S.D.N.Y. Sept. 17, 2020); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at
*2 (S.D.N.Y. Mar. 27, 2019).

amounts to approximately $28,872 ($18,872 + $10,000).  Thus, Plaintiff's recovery of $10,000

under the PSA represents around 34.6% of his best-case scenario recovery ($10,000 ÷ $28,872).

The Parties state that Yonkers Defendants maintained "accurate records of Plaintiff's

hours worked."  (Joint Letter 2.)  While the Parties have not provided these records to the Court,

the Court notes that their calculation is slightly inconsistent with the allegations included in the

Complaint.  Plaintiff alleges that he worked approximately 28 hours of overtime per week,

(Compl. ¶ 11), and that his salary was between $9 and $11 per hour, (*id.* ¶ 9).  As the Court

explained in its previous Order, Plaintiff's allegations suggest that he was denied approximately

$140 per week in overtime pay.  (Order 5 (Dkt. No. 16).)[5]  Although the Complaint alleges that

Plaintiff was employed by Defendants (generally) from approximately July 2016 to October

2018, (Compl. ¶ 10), the Parties now specify that Plaintiff was employed by Yonkers Defendants

(as opposed to the additional Dunwoodie Defendants) from approximately July 1, 2016 to April

6, 2018, (Joint Letter 2).  Over the course of this period—roughly 92 weeks—Plaintiff allegedly

would have been entitled to an additional $12,880 ($140/week x 92 weeks).  This approximation

is around $3,440 greater than the Parties' calculation of $9,436 with allegedly more precise

records.

In its previous Order denying the proposed partial settlement agreement in connection

with the Dunwoodie Defendants, the Court found that there was only a $360 difference between

the Parties' damages calculation (which was based on internal records) and its own calculation

---

[5] This calculation assumes that Plaintiff's salary was, on average, approximately $10 per
hour.  (*See* Order 5.)  Payment at the 1.5x rate would result in weekly overtime pay of
approximately $420 ($15 per hour x 28 hours/week).  Payment at the regular rate would result in
approximately $280 per week for the same amount of time ($10 per hour x 28 hours/week).
Thus, as noted, Plaintiff's allegations indicate that the was denied approximately $140 in
overtime pay each week ($420 – $280).

(which was based on allegations in the Complaint).  (*See* Order 5.)  The Court found that these calculations were sufficiently "similar" to find the settlement amount there reasonable.  (*See id.*)[6] Here, by contrast, the $3,440 difference between the Court's calculation and the Parties' calculation is too significant for the Court to approve the Settlement Amount without additional details regarding the underlying data and methodology the Parties used.  "[T]o evaluate the fairness of a proposed settlement, the parties must provide the court with enough information to evaluate the bona fides of the dispute." *Gaspar*, 2015 WL 7871036, at *1 (citation and internal quotation marks omitted).  Although the Parties have provided information regarding the number of hours Plaintiff allegedly worked each week, as well as the amount he was paid, the Court cannot discern how this information was used to calculate Plaintiff's total estimated base damages of $9,436.  The Parties must submit to the Court a more detailed explanation of Plaintiff's total estimated damages and the calculation of the Settlement Amount before the Court will approve it.  *See Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-CV-7131, 2021 WL 38264, at *4 (S.D.N.Y. Jan. 5, 2021) (denying settlement approval request without prejudice where the Court did "not have sufficient information to determine whether the [s]ettlement [a]mount [was] fair and reasonable"); *Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *3 (S.D.N.Y. Oct. 5, 2020) (same); *Gaspar*, 2015 WL 7871036, at *2 (noting that although the court was satisfied with the parties' explanation of the methodology used to generate the settlement amounts, the parties had failed to submit the "underlying data" to which the methodology was applied).

---

[6] The previous Order was not denied in connection with the proposed settlement amount, but rather on the ground that the release provision was too broad.  (*See* Order 7–8.)

Presuming additional data regarding the total potential damages is forthcoming to substantiate Plaintiff's estimated best-case scenario recovery, the Court concludes that the Settlement Amount is reasonable.  While the Settlement Amount is less than Plaintiff's optimistic, best-case scenario recovery, it exceeds the Plaintiff's potential FLSA base damages. Moreover, the Settlement Amount equals just over one-third of Plaintiff's total potential recovery.  Precedent confirms that securing such an amount is generally deemed fair, reasonable, and adequate.  *See, e.g.*, *Garcia*, 2019 WL 1382298, at *2 ("[P]laintiffs' net settlement . . . represents more than 28% of their total alleged damages and more than 72% of their claimed unpaid wages.  This percentage is reasonable, especially given plaintiffs' potential obstacles to recovery."); *Felix v. Breakroom Burgers & Tacos*, No. 15-CV- 3531, 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (approving settlement amount of less than 25% of the maximum possible recovery).  Additionally, as the Parties note, Plaintiff might not prevail on all claims at trial, particularly with respect to liquidated damages.  (Joint Letter 2.)  Through settlement, however, Plaintiff will obtain over one-third of his potential recovery and will avoid the time, costs, and hazards of litigation.  *See Rojas v. Bronx Moon LLC*, No. 17- CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (observing that "settlement [protects] the Parties from the risks associated with going to trial"); *Lopez v. Poko-St. Ann L.P.,* 176 F. Supp. 3d 340, 342 (S.D.N.Y. 2016) (finding settlement sum fair "in light of the legal and evidentiary challenges that would face the plaintiffs in the absence of a settlement").

## 2.  Good Faith

Here, as in its previous Order, the Court has no reason to doubt that the instant settlement "was negotiated competently, in good faith, [and] at arm's length," nor is there any reason to believe there was any fraud or collusion.  (Order 6.)  The Parties have represented as much in

their Joint Letter, and Plaintiff's counsel has extensive experience and expertise in labor and employment law, including over 27 years of litigation in this field.  (*See* Joint Letter 3.)

### 3.  Similarly Situated Plaintiffs

As was true when it issued its previous Order, the Court is not aware of other employees who are similarly situated to Plaintiff, and Plaintiff will be the only employee affected by the settlement and dismissal of the lawsuit.  These facts also weigh in favor of approval.  *See Escobar v. Fresno Gourmet Deli Corp.,* No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that "only the named plaintiff would be affected by dismissal," and that these facts supported approval of the proposed settlement); *Penafiel*, 2015 WL 7736551, at *2 (noting that the fact that "no other employee ha[d] come forward" supported settlement approval); *Santos v. Yellowstone Props., Inc.,* No. 15-CV-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (same).

### 4.  Release Provision

The Court concludes, however, that the release provision in the PSA is too broad.  (*See* PSA 2.)  "[T]he FLSA is a uniquely protective statute," *Cheeks,* 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (internal quotation marks omitted) (quoting *Nights of Cabiria,* 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.,* No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.,* No. 14-CV-2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a

settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.,* No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

Here, the proposed release provides that Plaintiff waives "all claims he could have asserted against [Yonkers] Defendants from the beginning of time until the date of this release for any claims under the [FLSA], [NYLL], including, but not limited to, claims for minimum wage, overtime, spread of hours, commissions, tips or gratuities, and all claims arising under the Wage Theft Prevention Act." (PSA 2.) The waiver of "any claims under the [FLSA], [NYLL], . . . [and] the Wage Theft Prevention Act"—beyond those relating to wage and hour issues—is overbroad. The FLSA and NYLL "govern more than just 'wage-and-hour issues,' and the release as written could potentially extinguish claims under provisions of FLSA or NYLL 'that have no relationship whatsoever' to the claims at issue in this case." *Rojas*, 2018 WL 4931540, at *3 (quoting *Cheeks,* 796 F.3d at 206–07). As noted, the case law is clear that "any release provision must be limited to the claims at issue in this action." *Lazaro-Garcia ,* 2015 WL 9162701, at *2; *see also Larrea v. FPC Coffees Realty Co., Inc.,* No. 15-CV-1515, 2017 WL 1857246, at *3 (S.D.N.Y. May 5, 2017) ("[A] number of judges in this District refuse to approve any FLSA settlement unless the release provisions are limited to the claims

at issue in this action." (internal quotation marks omitted)).  Here, the release is not expressly

limited only to the conduct underlying the claims in this case.  (*See* PSA 2.)  Although a

release "may include claims not presented and even those which could not have been

presented," it must still be limited to "conduct [that] arises out of the identical factual

predicate as the settled conduct." *Nights of Cabiria,* 96 F. Supp. at 181; *see also Martinez v.*

*Gulluoglu LLC,* No. 15-CV-2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) ("The

[c]ourt will not approve a release provision that extends beyond the claims at issue in this

action."); *cf. Pucciarelli v. Lakeview Cars, Inc.,* No. 16-CV-4751, 2017 WL 2778029, at *3

(E.D.N.Y. June 26, 2017) (approving release that, "while broad, . . .  relates specifically to

wage and hour issues without encompassing, for example, prospective discrimination

claims").  Before the Court will approve the Parties' proposed settlement, the release

provision must be appropriately narrowed.

### 5.  Attorneys' Fees

The Court finds that the attorneys' fees requested by Plaintiff's counsel are

reasonable.  Under both the FLSA and NYLL, a successful plaintiff—including one who

settles—is entitled to attorneys' fees.  *See Lizondro-Garcia v. Keji LLC,* No. 12-CV-1906,

2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b);

N.Y. Labor Law §§ 198, 663(1)).  In the Second Circuit, courts may calculate attorneys'

fees using one of two methods: the "lodestar" method or the "percentage of the fund"

method.  *See McDaniel v. Cty. of Schenectady,* 595 F.3d 411,417 (2d Cir. 2010).  "Under

the percentage-of-the-fund method, the attorneys are awarded a reasonable percentage of the

common fund."  *Lizondro-Garcia,* 2015 WL 4006896, at *3.  "Under the lodestar method,

'the district court scrutinizes the fee petition to ascertain the number of hours reasonably

billed to the class and then multiplies that figure by an appropriate hourly rate.'" *Ortiz v. Chop't Creative Salad Co. LLC,* 89 F. Supp. 3d 573, 590 (S.D.N.Y. 2015) (footnote omitted) (quoting *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 47 (2d Cir. 2000)). "After the computation is done, 'the district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys.'" *Id.* at 590–91 (quoting *Goldberger,* 209 F.3d at 47). "Although [the Second Circuit] ha[s] acknowledged that the trend in this Circuit is toward the percentage method, it remains the law in this Circuit that courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel,* 595 F.3d at 417 (some quotation marks omitted). Under either approach, courts draw on the following considerations—commonly known as the "Goldberger factors"—when assessing the reasonableness of attorneys' fees: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (alteration and quotation marks omitted).

When requesting attorneys' fees in an FLSA case, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336. Even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Id.*; *see also Guareno v. Vincent Perito, Inc.,* No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each

attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria,* 96 F. Supp. 3d at 181.  The Court must also determine the reasonable hourly rate by considering the "prevailing market rate for lawyers in the district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.,* 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

Under the PSA, Plaintiff's counsel would receive $5,000, which reflects a third of the Settlement Amount.  (Joint Letter 3.)  Such a percentage is appropriate, as courts in the Second Circuit routinely award attorneys in FLSA settlements one-third of the total recovery in fees.  *See Garcia v. Atlantico Bakery Corp.,* No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne- third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.,* No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *adopted by* 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).  Counsel also notes that his typical billing rate falls between $375 and $500 per hour, and that his requested rate in this case is $450 per hour.  (Joint Letter 4.) Counsel has also provided documentation showing the hours he has spent on this case.  (*See id.*; Joint Letter Ex. 2 (Dkt. No. 26-2).)  Considering these factors together, the Court finds that the proposed attorney's fee is reasonable under the "lodestar" method as well as the percentage-of-fund method.  *See Pucciarelli,* 2017 WL 2778029, at *2 (noting that the "lodestar method confirms [the] conclusion" that a fee constituting 33.3% of FLSA settlement was reasonable).

### III.  Conclusion

For the foregoing reasons, the Parties' request for approval of the PSA is denied without

prejudice.  The Parties may correct the deficiencies identified above and renew their application

for approval of their proposed settlement.

SO ORDERED.

Dated:  July 29, 2021
       White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE