UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAWAID I. KHAN,

                                        Plaintiff,

        v.

YONKERS AUTO CENTER, INC. *and*
RAYMOND ALBANO,
                                        Defendant.

No. 19-CV-5581 (KMK)

OPINION & ORDER

Appearances:

Raymond Nardo, Esq.
Raymond Nardo, P.C.
Mineola, NY
*Counsel for Plaintiff*

Clifford H. Green, Esq.
Clifford H. Greene & Associates
New Rochelle, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Jawaid Khan ("Plaintiff") brings this Action under the Fair Labor Standards Act,

29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, *et seq.* ("NYLL"),

against Defendants Dunwoodie Gas Station, Inc. and Reyad Mussa (the "Dunwoodie

Defendants"), and Yonkers Auto Center, Inc. and Raymond Albano (the "Yonkers Defendants"

and, together with the Dunwoodie Defendants, "Defendants"). (*See generally* Compl. (Dkt. No.

1).) Plaintiff and the Yonkers Defendants ("the Parties") have jointly requested the approval of a

proposed partial settlement resolving Plaintiff's claims against the Yonkers Defendants (the

"Proposed Settlement Agreement" or "PSA"). (Letter from Raymond Nardo, Esq., to Court

(Apr. 19, 2022) ("Revised Joint Letter") (Dkt. No. 28); (Letter from Raymond Nardo, Esq., to

Court (Apr. 19, 2022) Ex. 1 ("Revised PSA") (Dkt. No. 28-1).)[1]  For the reasons that follow, the

Parties' Application is granted.

## I.  Background

### A.  Factual Background

Plaintiff was employed by Yonkers Defendants, earning minimum wage as a cashier,

from approximately July 2016 to April 2018.  (Revised Joint Letter 2.)  According to the

Complaint, Plaintiff worked approximately 68 hours per week at a rate that ranged from $9 per

hour to $11 per hour.  (Compl. ¶¶ 9, 11.)  Plaintiff alleges that, during this period, he was not

paid premium overtime pay at the rate of time and a half, and that he was not permitted an

uninterrupted half hour for required meal breaks.  (*Id.* ¶¶ 9, 12.)

### B.  Procedural History

The procedural background of this Action has been summarized in this Court's previous

Opinion & Order dated July 29, 2021, denying the PSA (the "2021 Opinion").  (*See* Op. & Order

("2021 Op.") 2 (Dkt. No. 27).)  The Court therefore supplements the procedural history of the

case since the issuance of the 2021 Opinion.

On July 29, 2021, the Court denied the Parties' request of approval of their PSA without

prejudice.  (*Id.* at 14.)  On April 19, 2022, Plaintiff, on behalf of the Parties, filed a letter

requesting that the Court approve the Revised PSA.  (Dkt. No. 28.)

---

[1]On December 3, 2020, the Court so-ordered a stipulation dismissing the Action,
pursuant to Rule 41 of the Federal Rules of Civil Procedure, as to the Dunwoodie Defendants
only.  (Dkt. No. 20.)  The proposal for a partial settlement is therefore with respect to the
Yonkers Defendants only.  (*See* Revised Joint Letter 1.)

II.  Discussion

A.  Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute."  Fed. R. Civ. P. 41(a)(1)(A).  "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2).  The Second Circuit has confirmed that the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect."  *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied*, 577 U.S. 1067 (2016).  Consequently, "the [P]arties must satisfy the Court that their agreement is 'fair and reasonable.'"[2]  *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015) (citation omitted).

When assessing a proposed settlement for fairness, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement."  *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016)

---

[2] Although not relevant here, the Second Circuit has explained the authority of the Department of Labor to approve settlements, noting that "the Secretary of Labor has the authority to 'supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under'" certain portions of the FLSA, in which case "'[t]he agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have . . . to such . . . unpaid overtime compensation and' liquidated damages due under the FLSA."  *Cheeks*, 796 F.3d at 201 n.1 (second alteration in original) (quoting 29 U.S.C. § 216(c)).

(same); *Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov.

6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1

(S.D.N.Y. Aug. 20, 2013) (same).

As a number of courts have recognized, although a court should consider the totality of

the circumstances, the most significant factors include:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement
> will enable the parties to avoid anticipated burdens and expenses in establishing
> their respective claims and defenses; (3) the seriousness of the litigation risks faced
> by the parties; (4) whether the settlement agreement is the product of arm's-length
> bargaining between experienced counsel; and (5) the possibility of fraud or
> collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (quotation marks

omitted); *see also Zamora v. One Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1

(S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at

*2 (S.D.N.Y. Apr. 27, 2015) (same).  Conversely, factors which weigh against finding a

settlement fair and reasonable include:

> (1) the presence of other employees situated similarly to the claimant; (2) a
> likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-
> compliance by the same employer or others in the same industry or geographic
> region; and (4) the desirability of a mature record and a pointed determination of
> the governing factual or legal issue to further the development of the law either in
> general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (quotation marks omitted); *see also Villalva-Estrada v. SXB*

*Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same);

*Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014

WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

Making this determination "is thus an information intensive undertaking," *Camacho*,

2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to

evaluate the bona fides of the dispute," *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (quotation marks omitted).[3]  To this end, courts require information surrounding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . . , the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)) (first ellipsis in original) (quotation marks omitted).

## B. Analysis

The Court remains satisfied that the PSA was negotiated in good faith, that Plaintiff is the only employee who will be affected by the settlement and dismissal of the lawsuit, and that the attorneys' fees requested by Plaintiff's counsel are reasonable.  (*See* 2021 Op. 8–9, 11–13.)  The Court will therefore limit its discussion to the factors that led it to not approve the PSA in its 2021 Opinion.

### 1. Whether Settlement Amount is Fair and Reasonable

In both the Original and Revised PSA, the Yonkers Defendants agreed to pay Plaintiff a total sum of $15,000.00 (the "Settlement Amount").  (*See* Revised Joint Letter 2; Revised PSA 1; Letter from Raymond Nardo, Esq., to Court (Apr. 26, 2021) ("Original Joint Letter") 1 (Dkt. No. 26); Letter from Raymond Nardo, Esq., to Court (Apr. 26, 2021) Ex. 1 ("Original PSA") 1 (Dkt. No. 26-1).)  Of the Settlement Amount, $5,000 is to go to Plaintiff's counsel for fees and other

---

[3] This approach is consistent with the requirement that "FLSA settlements . . . not be confidential," in part because "sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair."  *Nights of Cabiria*, 96 F. Supp. 3d at 177–78 (citation and alteration omitted).

costs, and thus, Plaintiff's net settlement is $10,000.[4]  (*See id.*)  In the 2021 Opinion, the Court

noted that there was a substantial difference between the Parties' calculation of base damages

(which they calculated to be $9,436), and the Court's approximation of Plaintiff's base damages

(which the Court calculated to be $12,880, based on Plaintiff's allegations in the Complaint, as

well as the Parties' representations in the Original PSA).  (*See* 2021 Op. 5–6.)  As the Court

stated in the 2021 Opinion, "the $3,440 difference between the Court's calculation and the

Parties' calculation is too significant for the Court to approve the Settlement Amount without

additional details regarding the underlying data and methodology the Parties used."  (*Id.* at 7.)

In the Revised Joint Letter, the Parties noted that they corrected their base damages

calculation to $12,712.  (*See* Revised Joint Letter 3.)  Plaintiff alleges that he is owed

approximately $12,712 in base damages, $12,712 in liquidated damages, and $10,000 in

damages under the Wage Theft Prevention Act.  (*See id.*; *see also* 2021 Op. at 5 (noting that

liquidated damages are available "in an additional equal amount" as unpaid overtime

compensation under the FLSA) (citing 29 U.S.C. § 216(b)).  According to the Parties, the best

possible recovery for Plaintiff amounts to approximately $35,424.  (Revised Joint Letter 3.)

Thus, Plaintiff's recovery of $10,000 under the PSA represents around 28% of his best-case

scenario recovery ($10,000 ÷ $35,424) and 79% of base damages.

There is now only a $168 difference between the Parties' damages calculation and the

Court's approximation based on Plaintiff's allegations.  (*See* 2021 Op. 5–6 (explaining how the

Court reached its calculation of $12,880 in base damages).)  The Court is satisfied that these

---

[4] As noted in the 2021 Opinion, (*see* 2021 Op. 5 n.4), courts evaluate the fairness of a plaintiff's recovery after deducting attorneys' fees and costs.  *See Arango v. Scotts Co., LLC*, No. 17-CV-7174, 2020 WL 5898956, at *3 (S.D.N.Y. Oct. 5, 2020); *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020); *Garcia v. Cloister Apt Corp.*, No. 16-CV-5542, 2019 WL 1382298, at *2 (S.D.N.Y. Mar. 27, 2019).

calculations are sufficiently "similar" to find the settlement amount there reasonable.  (*See* Op. &
Order ("2020 Op.") 5 (Dkt. No. 16) (finding that $360 difference between the Plaintiff and the
Dunwoodie Defendants' damages calculation and the Courts' own calculation based on
allegations in the Complaint were sufficiently similar).)

Having resolved the damages calculation issue, the Court concludes, as it did in the 2021
Opinion, that the Settlement Amount is reasonable.  (*See* 2021 Op. 8.)

2.  Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will
not approve settlement agreements that contain overly broad release provisions that would
"waive practically any possible claim against the defendants, including unknown claims and
claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quotation
marks omitted) (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v.
Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If
the parties wish to obtain approval of their settlement, any release provision must be limited to
the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-
2824, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement
where "the parties' release language . . . include[d] 'actions and/or claims against the
[d]efendants, known or unknown, which [the plaintiff] may have as of the date of this
[a]greement including but not limited to any alleged violation of any federal, state or local law,
regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to
[the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson
Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a
settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—

including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues").

Here, the release in the Original PSA, which the Court found to be overbroad, (*see* 2021 Op. 10–11), provided that Plaintiff waived "all claims he *could have* asserted against [Yonkers] Defendants from the beginning of time until the date of this release for any claims under the [FLSA], [NYLL], including, but not limited to, claims for minimum wage, overtime, spread of hours, commissions, tips or gratuities, and all claims *arising* under the Wage Theft Prevention Act," (Original PSA 2 (emphasis added).)  The Revised PSA provides that Plaintiff waives "all claims he *asserted* against [Yonkers] Defendants under the [FLSA], [NYLL], including, but not limited to, claims for minimum wage, overtime, spread of hours, commissions, tips or gratuities, and all claims he *asserted* arising under the Wage Theft Prevention Act." (Revised PSA 2 (emphasis added).)

This new language expressly limits the release provision to the claims at issue in this Action, which is what is called for under the caselaw.  *See Salami v. B S D Food LLC*, No. 21-CV-02704, 2022 WL 671980, at *6 (S.D.N.Y. Mar. 7, 2022) (noting that "under the Second Circuit's precedent, any release provision must be limited to the claims at issue in th[e] action.") (quotation marks omitted)); *Lazaro-Garcia*, 2015 WL 9162701, at *2 (reciting the same principle); *Nights of Cabiria*, 96 F. Supp. 3d at 181 (holding that release must be limited to "conduct [that] arises out of the identical factual predicate as the settled conduct").  Thus, given that the new provision releases the Yonkers Defendants only from the claims asserted in this case, the Court finds that this release provision is now appropriately narrow.  *See Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751, 2017 WL 2778029, at *3 (E.D.N.Y. June 26, 2017) (approving release that, "while broad, . . . relates specifically to wage and hour issues without

8

encompassing, for example, prospective discrimination claims"); *Perez v. Ultra Shine Car Wash, Inc.*, No. 20-CV-782, 2022 WL 2129053, at *4–5 (S.D.N.Y. June 14, 2022) (approving release that was "limited solely and only to wage and hour claims that have arisen on, or prior to, the date th[e] [a]greement [was] executed").

### III. Conclusion

For the foregoing reasons, the Parties' request for approval of their Revised Proposed Settlement Agreement is granted.  The Clerk of Court is respectfully directed to close this case.


SO ORDERED.

DATED:        July 21, 2022
                   White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE